Elias **VILLARREAL** et al., Appellants,

v.

**TEXAS FARMERS INSURANCE COMPANY** et al., Appellees.

No. 852.

Court of Civil Appeals of Texas, Corpus Christi.

May 31, 1974.

Rehearing Denied June 27, 1974.

Anthony F. Constant, Canales & Garza, Corpus Christi, for appellants.

S. E. Dyer, Dyer, Redford, Burnett, Wray & Woolsey, Leslie S. Lockett, Kleberg, Mobley, Lockett & Weil, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This suit involves the uninsured motorist's provision of the plaintiffs' own insurance policies. Plaintiffs contend that where the tortfeasor's insurance carrier cannot respond sufficiently in damages to a valid judgment of the injured parties, the uninsured motorist's provisions contained in their respective automobile policies should cover their loss to the extent of its coverage. The insurance companies' motions for summary judgment were granted. The plaintiffs appeal to this Court.

Plaintiff Elias Villarreal was driving his vehicle in which his wife and Romeo and Irma Saenz were passengers. The plaintiffs sued the estate of Gerald Mitchell for damages growing out of an automobile collision in which Mitchell was proved to have been at fault. Villarreal joined Texas Farmers Insurance Company and Romeo and Irma Saenz joined Members Mutual Insurance Company as party defendants, claiming liability under the uninsured's motorist's provision of their respective automobile insurance policies which were issued to them.

The defendant, Gerald Mitchell, carried liability insurance with Leatherby Insurance Company in the amount sufficient to satisfy the requirements of the Texas Safe-

ty Responsibility Law, Art. 6701h, Vernon's Ann.Civ.St. . Leatherby Insurance Company filed an interpleader counterclaim contending that there were conflicting claims among several persons to the lawsuit. It requested that it be allowed to pay the sum of $20,000.00 (its full policy limits) into the court for the use and benefit of the plaintiffs. At the same time Leatherby Insurance Company filed a cross-action against the plaintiffs praying that the $20,-000.00 be declared to be the full amount of liability insurance covering Mitchell; that it have no further liability as to plaintiffs; and that the court distribute the sum to the plaintiffs as the court may deem proper. The trial court signed an order which found that the $20,000.00 was the limit of liability covering the estate of Gerald Mitchell, deceased, and directed that the money be entered into the registry of the court thereby discharging Leatherby Insurance Company from any and all liability as to plaintiffs. The plaintiffs approved the order on this interpleader claim.

The court then severed the plaintiffs' action against Texas Farmers Insurance Company and Members Mutual Insurance Company from plaintiffs' action against the estate of Gerald Mitchell. After the severance, plaintiffs proceeded to judgment against the estate of Gerald Mitchell recovering damages as follows: plaintiff Elias Villarreal recovered judgment for $10,000.00 for his personal injury; $10,000.00 as community survivor for the wrongful death of his wife; and $30,000.00 as next friend and guardian of his children for the wrongful death of their mother. Romeo Saenz recovered judgment for $10,000.00. Irma Saenz recovered judgment for $20,000.00. The total judgment against Mitchell was in the amount of $80,000.00.

The trial court ordered the proceeds from the Leatherby Insurance Company's policy distributed as follows: $10,000.00 to Elias Villarreal for his personal injuries only and $10,000.00 to Romeo Saenz. There was nothing paid on the judgment because of the wrongful death of Elias Villarreal's wife or on the judgment for the personal injuries of Irma Saenz. There is no explanation for the method of this distribution nor is there any complaint made of it on appeal.

Texas Farmers Insurance Company and Members Mutual Insurance Company filed motions for summary judgment urging that as a matter of law plaintiffs did not state a cause of action because Gerald Mitchell, the defendant, was not "uninsured" within the meaning of the plaintiffs' automobile insurance policies. Supplemental motions for summary judgment by plaintiffs' insurance companies urged that plaintiffs' approval of the order on Leatherby Insurance Company's interpleader counterclaim amounted to a "settlement" not approved by the plaintiffs' own insurance companies thereby resulting in releasing them from any liability in connection with their policies. The trial court granted the summary judgments.

Plaintiffs in their suit seek to recover the difference between the sum received from Mitchell's liability insurance and the $10,000.00 per person limits provided by the uninsured motorist's provision in their respective policies. The effect of plaintiffs' contentions is that since Mitchell's liability insurance coverage was not sufficient to cover the damages evidenced by a valid judgment, plaintiffs should be assured of getting their damages in money under the uninsured motorist coverage for which they paid premiums to their own companies. They argue that "uninsured automobile" should be defined in terms of the financial loss by persons legally entitled to recover damages.

The two policies issued by the insurance companies contained similar provisions protecting the insured against uninsured motorists. The policy issued by Members Mu-

tual Insurance Company[1] defined an uninsured automobile similarly to that issued by Texas Farmers Insurance Company.[2]

The plaintiffs argue that the obvious purpose of the uninsured motorist's act is to provide a source of indemnification for injuries where the tortfeasor cannot provide it. The act provides in part as follows:

"(1) No automobile liability insurance . . . shall be delivered or issued for delivery in this state unless coverage is provided therein or supplemental thereto, in the limits described in the Texas Motor Vehicle Safety-Responsibility Act, under provisions prescribed by the Board, *for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles* because of bodily injury, sickness or disease, including death, resulting therefrom. . ." (Emphasis supplied.) Art. 5.06–1, V.A.C.S. Insurance Code

The plaintiffs state that the "protection" for which the act was designed should cover the injured parties the same as if the tortfeasor was uninsured. The plaintiffs advance a number of other arguments. They argue that these injured plaintiffs are in precisely the same predicament and are just as much unprotected as if the tortfeasor was uninsured, since he cannot respond in damages. A denial of liability, the

insolvency of the tortfeasor's insurance carrier, or the failure of the third party tortfeasor to acquire insurance produces the same result on the injured plaintiffs. The plaintiffs contend that although they are fully insured they are prevented from recovering from the tortfeasor because they just happen to be injured in the same accident where two or more people sustained injuries equal to or greater than $10,000.00. They say that this happenstance is totally unrelated to the real purpose of the act. They say the act should provide "protection" to persons insured thereunder who are legally entitled to recover damages from owners or operators of motor vehicles which are uninsured and underinsured. They reason that the risk the statute sought to eliminate, and for which the plaintiffs paid premiums to protect against, has occurred. They claim that their respective companies have refused to respond in damages to a valid judgment to the extent they are covered by their own insurance which has been paid for by them.

Finally, the plaintiffs urge us to hold that the definition of an uninsured motorist as promulgated by the Insurance Board of the State of Texas contravenes the legislative intent of the uninsured motorist act. This same argument was advanced and rejected in Kemp v. Fidelity & Casualty Company of New York, 504 S.W.2d 633 (Tex.

1. " 'Uninsured automobile' includes a trailer of any type and means: (a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder, or with respect to which there is a bodily injury liability insurance policy applicable at the time of the accident but the company writing the same is or becomes insolvent."

2. " 'Uninsured motor vehicle' includes a trailer of any type and means: (a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the Company writing the same denies coverage thereunder or is or becomes insolvent; . . . "

**637**

Civ.App.—Eastland 1973, writ ref'd n. r. e.). We agree with the holding in Kemp.

■ The terms insured and uninsured are words of common meaning and understanding. An insured is a person whose life or property is insured by a policy of insurance. The prefix "un" means not! Automobile liability insurance is insurance that provides protection against loss from or legal liability for damages arising out of the ownership, maintenance, or operation of a motor vehicle. It is the duty of the courts to give full recognition to the legislative intent. When the intent is plainly expressed in the language of a statute, we must give effect to such language without attempting to construe or give it a meaning that its ordinary signification does not import. The definitions of an uninsured automobile in the respective policies of these plaintiffs do not contravene the intent and purpose of the statute in question. See Detrick v. Aetna Casualty and Surety Company, 158 N.W.2d 99 (Iowa Sup.Ct.1968).

■ Here Gerald Mitchell was the owner of a policy of liability insurance. He was insured in the amount required by the Texas Motor Vehicle Safety Responsibility law. Mitchell was insured under any definition of the word and in particular under the definition of "uninsured automobile" which is contained in the uninsured motorist's provisions of the Standard Texas Family and Automobile insurance policy. Mitchell had insurance in the amount that was required under Texas law. Mitchell's liability carrier was not insolvent. The company did not deny coverage. It is clear to us that Mitchell was not an uninsured motorist so that the uninsured motorist provision in plaintiffs' insurance policies could come into effect.

The plaintiffs rely upon Porter v. Empire Fire and Marine Insurance Company, 106 Ariz. 274, 475 P.2d 258 (1970). This case supports their contention. However, other jurisdictions have been faced with nearly the same question and have decided it contrary to appellants' contentions. See

Lund v. State Farm Mutual Automobile Insurance Company, 342 F.Supp. 917 (Western Dist.Okl.1972); Smiley v. Estate of Toney, 44 Ill.2d 127, 254 N.E.2d 440 (1969); Detrick v. Aetna Casualty and Surety Company, supra; Continental Insurance Co. v. Wallace, 233 So.2d 195 (Florida Appeals 1970). Our Supreme Court has approved the holding in Kemp v. Fidelity & Casualty Co. of New York, supra, which is contrary to Porter. We agree that it was proper for the trial court to have granted summary judgment in this case. It is not necessary that we consider appellants' second point of error because of our holding herein.

The judgment of the trial court is affirmed.