Julie **BARNES** and Michael Barnes, By and Through his mother and next friend Julie Barnes, Appellees,

v.

**OKLAHOMA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant,**

Shun Cory Donaldson; and State Farm Mutual Insurance Company, Defendants.

No. 80189.

Court of Appeals of Oklahoma, Division No. 1.

Oct. 26, 1993.

Rehearing Denied Nov. 30, 1993.

Certiorari Denied Feb. 15, 1994.

Robert B. Mills, Kent R. McGuire, Oklahoma City, for appellant.

Jack S. Dawson, James A. Scimeca, Kelly A. George, Oklahoma City, for appellees.

## MEMORANDUM OPINION

HANSEN, Chief Judge:

Appellant, Oklahoma Farm Bureau Mutual Insurance Company, (Farm Bureau), seeks review of the trial court's order denying its Motion to Reconsider. The trial court granted Appellees' motion for partial summary judgment against Farm Bureau in the amount of $15,000.00, the amount of uninsured motorist coverage provided in an insurance policy between Appellee Julie Barnes, (Barnes), and Farm Bureau. The trial court further found Farm Bureau, by its actions, waived any subrogation rights it may have had pursuant to 36 O.S. 1991, § 3636(E) and that Barnes is free to accept Defendant Donaldson's settlement offer of $10,000.00.

Farm Bureau's motion for summary judgment on Barnes' claim Farm Bureau breached the insurance contract in bad faith, has been stayed pending resolution of this appeal.[1]

On January 29, 1991, Appellee Barnes and her son were injured in a head-on automobile accident.[2] Defendant Donaldson was the driver of the other car which was driving left of the center line. Donaldson is covered by a policy of automobile liability insurance with per person limits of $10,000.00. Barnes is covered by two separate policies of insurance which provide her with underinsured motorist (UIM) coverage. The primary policy is with Farm Bureau for $15,000.00 and the second policy is with State Farm, which provides Barnes $25,000.00 in UIM benefits. Donaldson's liability carrier offered to settle with Barnes for its $10,000.00 policy limits. State Farm paid its $25,000.00 policy limits to Barnes and was dismissed.

The uncontroverted facts show Barnes' claim exceeds $50,000.00, which is the amount of all available insurance. By letter dated November 19, 1991, Farm Bureau advised Barnes it would tender the $15,000.00 UIM benefits for the injuries she received in the accident, and retained its right of subrogation against the tortfeasor, Donaldson. The letter further provided:

Should you desire to provide us with the proper statutory notice requirements as set forth in 36 O.S. § 3636(E), Farm Bureau stands willing to substitute its payment to your client in place of the alleged tortfeasor's liability limits. If you elect this procedure, Farm Bureau shall be entitled to {Barnes'} right of recovery to the extent of such payment from the alleged tortfeasor, Donaldson, all as set forth in 36 O.S. § 3636(E)(2).

By letter dated December 11, 1991, Barnes advised Farm Bureau, pursuant to 36 O.S. 1990 Supp., § 3636(E), that Donaldson's insurance carrier was ready to pay its $10,000.00 policy limits to Barnes if it could obtain subrogation waivers from Farm Bu-

---

1. The trial court specifically found there was no just reason to delay the final entry of judgment, thus satisfying 12 O.S. 1991 § 1006.

2. The claim of Appellee Barnes' minor son is not involved in this appeal as such was settled by a friendly suit.

reau. In response, on February 10, 1992, Farm Bureau sent a $10,000.00 draft and a "Receipt and Partial Release Under Uninsured Motorist Coverage Subrogation Agreement" to Barnes. The letter accompanying these items stated:

This $10,000.00 payment is being made in substitution of Shun Donaldson's liability limits of $10,000.00. Oklahoma Farm Bureau does retain its subrogation right against the alleged tortfeasor, Donaldson, and is entitled to any right of recovery against the defendant Donaldson to the extent of our substituted payment.

The "Receipt and Partial Release" which Farm Bureau wanted Barnes to execute provides:

1. In consideration of the payment of $10,000.00 by Oklahoma Farm Bureau Mutual Insurance Company, the receipt of which is hereby acknowledged, the undersigned hereby partially releases Oklahoma Farm Bureau Mutual Insurance Company to the extent of this $10,000 payment from its under-insured motorist obligations under the coverage designated above of Policy No. 0041636–101, issued to Allen D. and/or Julie Lynn Barnes by Oklahoma Farm Bureau Mutual Insurance Company, and arising out of bodily injuries sustained by Julie Barnes due to an accident on or about the 29th day of January, 1991.

(Underline added).

By letter dated February 13, 1992, Barnes responded to this purported "substitution", maintaining the submitted Release was inaccurate in that it provides it was partial payment of Farm Bureau's underinsured motorist obligation. Barnes submitted an alternative Release and Subrogation Agreement without the language above-underlined. Additionally, Barnes renewed its demand for the entire $15,000.00 in underinsured motorist benefits. On February 24, 1992, Barnes returned Farm Bureau's "substituted" $10,-000.00 draft because it insisted she sign the release with the language which stated the $10,000.00 is a partial payment of the $15,-000.00 underinsured benefits. Barnes again demanded $15,000.00 in underinsurance benefits and again demanded Farm Bureau either waive subrogation and allow her to take the $10,000.00 offered by the liability carrier or substitute its $10,000 payment for the liability coverage.

On appeal, Farm Bureau does not contest the trial court's finding that it owes $15,-000.00 in UIM coverage to Barnes. The sole issue is whether the trial court erroneously determined Farm Bureau waived any subrogation rights it may have had pursuant to 36 O.S. 1991, § 3636(E).

Section 3636 of Title 36 of the Oklahoma Statutes requires that uninsured motorist coverage be offered in every policy insuring a vehicle unless it is waived by the insured. In Subsection C of that Section, "uninsured motor vehicle" includes underinsured motor vehicles, that is, where the liability limits are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other. In 1989, the Oklahoma Legislature amended Section 36 by specifying procedures regarding the preservation of insurers' subrogation rights.[3] Subsection E, 1989 amendments underlined, provides:

E. In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer. Provided, however, with respect to payments made by reason of the coverage described in subsection C of this section, the insurer making such payment shall not be entitled to any right of recovery against such tort-feasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tort-feasor. Provided further, that any payment made by the insured tort-feasor shall not reduce or be a credit against the total

---

3. See Chapter 98, Section 1, O.S.L. 1989, effective November 1, 1989.

liability limits as provided in the insured's own uninsured motorist coverage. *Provided further, that if a tentative agreement to settle for liability limits has been reached with an insured tort-feasor, written notice shall be given by certified mail to the uninsured motorist coverage insurer by its insured. Such written notice shall include:*

*1. Written documentation of pecuniary losses incurred, including copies of all medical bills; and*

*2. Written authorization or a court order to obtain reports from all employers and medical providers. Within sixty (60) days of receipt of this written notice, the uninsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The uninsured motorist coverage insurer shall then be entitled to the insured's right of recovery to the extent of such payment and any settlement under the uninsured motorist coverage. If the uninsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within sixty (60) days, the uninsured motorist coverage insurer has no right to the proceeds of any settlement or judgment, as provided herein, for any amount paid under the uninsured motorist coverage.*

■ Appellant is correct when it states uninsured motorist coverage is available to a claimant whenever the insured's claim for damages exceeds the liability insurance limits of the tortfeasor. *Buzzard v. Farmers Insurance Company, Inc.*, 824 P.2d 1105, 1112 (Okla.1991). 36 O.S. 1991, § 3636(E) makes it clear that any payment made by the insured tortfeasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage. "The new indemnity of the Section 3636 carrier is not partial but total. Whenever the coverage applies, the insured gets it all from the carrier." *Roberts v. Mid–Continent Casualty Company*, 790 P.2d 1121, 1123 (Okla.App.1989), quoting *Tidmore v. Fullman*, 646 P.2d 1278 (Okla.1982).

■ The uninsured motorist carrier is entitled to proceed in its own right against the tortfeasor upon payment of damages to a plaintiff. *Roberts*, at 1124. The right of subrogation, when it exists, is vested in the uninsured motorist carrier and the insured is required not to undertake any active step which would destroy the uninsured motorist carrier's subrogation rights. *Roberts*, at 1124; *Porter v. M.F.A. Mutual Insurance Company*, 643 P.2d 302 (Okla.1982). The 1989 amendments to Section 36 set forth the procedure which must be taken in order for the uninsured motorist insurer to perfect its right of subrogation. The procedure protects insurers' subrogation rights by requiring the insured to give notice of any tentative settlement agreement with the tortfeasor's carrier. It also protects insureds by establishing a sixty-day period within which the uninsured motorist insurer must either substitute the tortfeasor's settlement or lose its right of subrogation.

■ Did Farm Bureau's tender of $10,000.00 to Barnes constitute an adequate "substitution" as is contemplated by 36 O.S. 1991, § 3636(E)? The answer is no. Farm Bureau's requirement that Barnes execute the Release, which provides she released them for the $10,000.00 under her UIM policy, was an attempt to do what the statute explicitly provides the UIM insurer may not do. The tendered $10,000.00 was not a "substitution" of Donaldson's insurer's settlement but a tender of only a portion of the uninsured motorist benefits which Barnes was due. Under Farm Bureau's rationale, Farm Bureau would tender $15,000.00 to Barnes and Farm Bureau would receive Donaldson's $10,000.00 in liability benefits, making Farm Bureau's net payment $5,000.00. Or Farm Bureau could tender $10,000.00 to Barnes in "substitution" of Donaldson's $10,000.00 settlement, and Farm Bureau would have full subrogation against Donaldson for $10,000.00. Under this last scenario, Farm Bureau would tender only $5,000.00 which would be its UIM limit after the $10,000.00 "substitution". In either case, all Farm Bureau really offered Barnes was $5,000.00 of her contracted coverage, $15,000.00.

Appellant's reference to the Kansas uninsured motorist insurance statutes and case law are inapposite. As Appellant notes, under the Kansas UIM statute, UIM coverage is available only if the tortfeasor's liability insurance limits are less than the claimant's UIM coverage and the claimant has damages

in excess of the tortfeasor's liability coverage. Although Farm Bureau's "exposure" in this case is $25,000.00 if it had properly substituted Donaldson's settlement, Farm Bureau would have been subrogated to Barnes' right to $10,000.00 and would only pay out the amount that it contracted with Barnes to provide.[4]

As noted by Appellant, the purpose of the uninsured motorist statutes are to provide coverage for injuries which would otherwise go uncompensated and to provide the same protection to a person injured by an uninsured motorist as he would have enjoyed as if the uninsured motorist had carried adequate liability insurance. *Simmons v. Hartford Accident & Indemnity Company*, 543 P.2d 1384, 1388 (Okla.1975). To find Farm Bureau's construction of the term "substitution" reasonable, would give Barnes only $40,000.00 in UIM benefits (State Farm's $25,000.00, Farm Bureau's $5,000.00, and Donaldson's $10,000), when the combined policies give her coverage of $50,000.00. This construction is unreasonable.

Summary judgment is a procedural device used to reach a final judgment where there is no dispute as to any material facts. *Hargrave v. Canadian Valley Electric Co-operative*, 792 P.2d 50, 55 (Okla.1990). Farm Bureau has not shown there are any disputed facts which would justify a trial. The judgment of the trial court is AFFIRMED. Farm Bureau does not deny its $15,000.00 obligation to Appellees. Accordingly, Appellees' Motion for Judgment on Supersedeas bond for $15,000.00 is granted.

ADAMS, J., concurs.

JONES, P.J., dissents.

---

4. Farm Bureau maintains a provision in the insurance contract authorizes it to "deduct" Donaldson's liability insurance from Barnes' UIM benefits. Although the insurance contract does not appear in the record on appeal, we are told the provision reads:

If we make any payment and the insured recovers from another party, the insured shall hold the proceeds in trust for us and pay us back the amount we have paid.

First, Farm Bureau has not shown how this provision applies in this case since Barnes has not recovered anything from Donaldson's liability carrier, nor has Farm Bureau made any payment to Barnes. Second, this provision would clearly reduce the amount of coverage available under the UIM policy to less than the amount required by statute and would therefore violate 36 O.S. 1991, Sec. 3636(E). *Chambers v. Walker*, 653 P.2d 931, 935 (Okla.1982).